U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAY 16 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MICHAEL HAMILTON,<br>    Plaintiff | CIVIL ACTION<br>NO. CV05-1563-A |
| VERSUS | |
| WARDEN WILKINSON,<br>    Defendant | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Michael Hamilton ("Hamilton") on August 23, 2005, and amended on December 9, 2005 (Doc. Item 6). The named defendants are Tim Wilkinson (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana) and three corrections officers employed at WCC, Carlos Williams, James Rials, and Melvin Braxton.[1] Inmate Robert Washington is also a defendant, against whom Hamilton alleges a supplemental state law claim (Doc. Items 6, 13). Hamilton contends

---

[1] Captain Colman is also named as a defendant in Hamilton's amended complaint (Doc. Item 6). However, Hamilton did not complete a summons form for Colman and Colman was never served. Therefore, it will be recommended that the complaint against Captain Colman defendants be dismissed without prejudice under Fed.R.Civ.P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

that, on July 20, 2005, the defendants failed to protect him from an attack by another inmate, Robert Washington, and that WCC is understaffed. Hamilton alleges in his complaint that inmate Washington threw disinfectant into Hamilton's eyes, then stuck a pencil in Hamilton's right eye, causing him to lose the vision in that eye (See also, Doc. Item 34, p. 418). Hamilton received emergency room care and, later, surgery to his right eye. Hamilton contends he is still receiving medical treatment for eye problems caused by the incident, continues to have pain, and has to wear dark sunglasses (Doc. Item 17).

Defendants Wilkinson, Williams, Rials and Braxton answered the complaint (Doc. Item 19). Hamilton filed a motion for summary judgment (Doc. Items 17, 24), and the defendants (except Washington) filed a cross-motion for summary judgment (Doc. Items 22). Hamilton moved for and was granted a preliminary default against Washington (Doc. Item 29). The cross-motions for summary judgment are now before the court for disposition.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is

no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Williams, Braxton, and Rials

Hamilton contends Williams, Braxton and Rials failed to protect him from inmate Washington. The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to

prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware even of an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

5

Hamilton contends Braxton forced Hamilton to share a cell with Washington after Washington threatened to harm Hamilton if he was placed in his cell (Doc. Items 6 & Exs., 24). Hamilton states that he asked Braxton not to put him in the same cell as Washington, but Braxton refused (Doc. Items 6, 24). Hamilton further states in his affidavit that, when Braxton was placing him in Washington's cell, an inmate in a neighboring cell, Alton Hill, offered to swap cells with Hamilton, but Braxton refused to let him do so (Doc. Items 24). Hamilton contends Washington appeared to be under the influence of an illegal substance the night he woke Hamilton up and attacked him (Doc. Items 17, 24). Hamilton contends Rials failed to protect him by permitting Washington to work around the entire unit, thereby giving Washington access to his "weapons," the disinfectant and a pencil. Hamilton alleges Williams was on duty the night Washington attacked him and found part of the pencil that Washington broke off in Hamilton's eye, which he turned into Capt Hay as evidence (Doc. Item 6).[2] Hamilton also claims Washington

---

[2] In an attempt to determine whether Hamilton sustained an actual injury in the "attack" by Washington, the defendants have been ordered to provide Hamilton's medical records, as well as the disciplinary proceedings and criminal charges stemming from the alleged attack. Counsel for defendant informed the court that his attempts to obtain the medical records from LSU Medical Center (where Hamilton claims he had eye surgery) and E.A. Conway Hospital (where Hamilton claims he received emergency care after the attack) are ongoing. It is assumed for purposes of this motion that Hamilton's unrefuted claims as to the nature of the attack by Washington and the severity of his injuries are true.

Also, defendants contend the East Baton Rouge Parish prison medical records for a "Michael Hampton" belong in the set of

was never searched at the end of his work shift when he worked as an orderly in the unit (Doc. Item 24).

Defendants state in the affidavits by Wilkinson, Rials, Williams, and Braxton, that Washington never asked to be placed in protective custody, and that they were unaware of any problems between Hamilton and Washington. No mention is made of the statements allegedly made by inmates Washington, Hamilton, and Hill to Braxton, as set forth in the complaint and Hamilton's statement (Doc. Item 24, p.3). Also, according to defendants' submissions to this court, criminal charges were not filed against Washington for his attack on Hamilton which resulted in severe injury. Instead, only prison "disciplinary charges" were filed, for which Washington was convicted and sentenced to one month of no commissary.

Since defendants claim they were unaware of any animosity or problem between Hamilton and Washington, and Hamilton claims that, at the time he was placed in Washington's cell, he told the prison officials not to house him with Washington because Washington had threatened him and Washington allegedly threatened Hamilton in front of prison officials, there is a genuine issue of material

---

medical records provided by the prison for Michael Hamilton, alleging in their brief that sometimes Michael Hamilton signs his name as "Michael Hampton" (Doc. Item 34). However, there is no evidence in the record before this court that Michael Hamilton and Michael Hampton are the same person. It is noted there is no DOC inmate number on Hampton's medical records, as there is on Hamilton's medical records. Identity and privacy issues aside, since Hampton's medical records predate Hamilton's July 20, 2005, injury, they are irrelevant to this case.

fact as to whether the prison officials had knowledge that Washington may harm Hamilton which precludes a summary judgment on this issue.

Therefore, defendants' motion for summary judgment should be denied on the failure to protect claim.

Warden Wilkinson

Next, Hamilton alleges that Wilkinson failed to protect him because, he argues, the attack was a result of the poor security at WCC, for which Wilkinson is responsible, and because he failed to have criminal charges filed against Washington (Doc. Item 1). Hamilton submitted his grievance to the Warden, complaining that criminal charges had not been filed against Washington. The response from the warden was that Hamilton's "injury was not of that [sic] which would cause charges to be filed" (Doc. Item 1, Ex.). Hamilton argues that, although Washington was found guilty of "fighting" by the disciplinary board and punished with ten days in isolation and four weeks of phone restrictions (Doc. Item 34, Ex., p. 15), neither the charge nor the punishment was adequate given the severity of Hamilton's injuries. As to his claim of poor security at WCC, Hamilton complains Washington was never searched after his work shifts, which resulted in Washington being able to obtain the disinfectant and pencil with which he attacked Hamilton. Hamilton named Wilkinson as a defendant in his capacity as a supervisor, since Hamilton has not made any specific factual

8

allegations which involve Wilkinson.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992), <u>cert. den.</u>, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); <u>Thompkins</u>, 828 F.2d at 303. Therefore, to prevail, Hamilton must plead and prove (1) there was a policy at the WCC regarding searches of inmates, promulgated or implemented by Warden Wilkinson, that demonstrated deliberate indifference to inmate safety and (2) that this policy caused his injury. <u>Greason v. Kemp</u>, 891 F.2d 829, 838 (11th Cir. 1990); <u>Westmoreland v. Brown</u>, 883 F.Supp. 67, 76 (W.D.Va. 1995).

Defendants have not submitted any argument in their motion for summary judgment or evidence as to the issue of the adequacy of prison security at WCC with respect to searches of inmates after their work shift is over, as raised in Hamilton's complaint. Therefore, defendants' motion for summary judgment should be denied

9

on this issue.

Hamilton also complains that criminal charges were not filed against Washington by Warden Wilkinson. Defendants argue that Warden Wilkinson did not have a duty to file criminal charges against Washington. The Constitution does not mandate that a state prison must refer cases of inmate-on-inmate assault for criminal prosecution rather than dealing with them by prison discipline. The decision about whether to use the criminal justice system or the prison's own system of punishments involves matters of judgment as between two reasonable alternatives. Compare, Hamilton v. City of New York, 2002 WL 31175235 (S.D.N.Y. 2002). Although a failure of authorities to either institute criminal charges against inmates who attack other inmates or adequately address the problem through the prison disciplinary system may demonstrate deliberate indifference to inmates' safety,[3] that factor goes to the weight of the evidence on the issue of deliberate indifference. There is no basis for a court to rule that, as a matter of constitutional law, prison officials must file criminal charges.

Since there are no genuine issues of material fact which would preclude a summary judgment on the issue of Wilkinson's failure to file a criminal complaint against Washington, defendants' motion for summary judgment should be granted in favor of Warden Wilkinson

---

[3] Obviously, if inmates know they can attack other inmates with relative impunity, the risk of inmate on inmate violence will increase.

10

on this issue only.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED in favor of Wilkinson on the issue of the failure to file a criminal complaint against Washington.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment be DENIED on all other issues presented in Hamilton's failure to protect claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of May, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE