RECEIVED
IN ALEXANDRIA, LA.

MAR 1 7 2010

TONY R. MOORE, CLERK
BY_____
        DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| MICHAEL HAMILTON | CIVIL ACTION NO. 1:05-cv-01563 |
| -vs- | JUDGE DRELL |
| WARDEN WILKINSON, et al. | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

Plaintiff, Michael Hamilton, filed this suit seeking compensation for damages he allegedly sustained on July 20, 2005 when he was attacked by another inmate, Robert Washington, while both men were incarcerated at Winn Correctional Center ("W.C.C."). This Court's jurisdiction arises under 28 U.S.C. §§ 1343 and 1367.

After pretrial motions and other dispositions, Plaintiff proceeded to trial on his tort claims against Robert Washington and on his failure to protect claims against Timothy Wilkinson, Carlos Williams, James Rials, and Melvin Braxton. At the close of Plaintiff's case, the Court granted the Motion for Judgment on Partial Findings under Fed. R. Civ. P. 52 filed by Wilkinson, Williams, Rials, and Braxton, thus dismissing all remaining claims against those defendants with prejudice. (Document No. 74.)

In accordance with Fed. R. Civ. P. 55, the Clerk of Court properly issued a Notice of Entry of Default in favor of Plaintiff and against Defendant, Robert Washington, on April 17, 2007. (Document No. 29.)  Washington appeared at trial after having been subpoenaed by the other Defendants as a witness, and he admitted he did not answer or contest the allegations in the suit, because he did not feel he needed to do so.  Thus, under Fed. R. Civ. P. 8(b)(6), Washington was deemed to have admitted all well-pleaded allegations of Plaintiff's Complaint concerning liability, and it was necessary only for the Court to receive evidence regarding the amount of damages.  See, Fed. R. Civ. P. 55(b)(2).  The matter has now been tried before this Court, and all appropriate post-trial submissions have been made.  Considering the evidence and argument presented, and for the reasons set forth below, this Court will render judgment in favor of Plaintiff, Michael Hamilton, and against Defendant, Robert Washington, in the amount of $17,500.00 plus legal interest and costs, if any, as provided by law.

<u>Plaintiff's Complaints and the Medical Evidence</u>

Hamilton testified at trial that during an altercation on July 20, 2005, Washington, Plaintiff's cellmate at W.C.C., threw some type of chemical that smelled like bleach in Hamilton's right eye.  Then, while Plaintiff was attempting to splash water into his eye to stop the burning sensation, Washington stabbed Plaintiff above the right eyebrow with what he presumed to be a pencil. Hamilton believes the pencil penetrated his right eye socket but did not actually puncture

his eyeball.  Plaintiff further explained that immediately after the incident, he could not see out of his right eye, and he was bleeding profusely.  Hamilton stated he was first taken to the infirmary at W.C.C.  He was then transferred to E. A. Conway Hospital, and eventually underwent surgery at Louisiana State University Health Sciences Center ("LSUHSC") in Shreveport.  Hamilton said he was told at some point that his optic nerve was injured, and that the damage to the nerve and his loss of sight in the right eye would probably be permanent.  At the time of trial, Hamilton complained he suffered steady pain in his right eye and had no vision on that side.  He testified that he treated himself by placing wet towels on the eye and using drops to try to relieve the pain.  Hamilton further explained he was able to see out of his left eye, and that he had no problems with either eye prior to the July 20, 2005 incident.

Pat Thomas, a nurse who is employed as the Medical Director at W.C.C., testified she reviewed Plaintiff's medical records and took particular interest in several entries, including LSUHSC records dated July 23, 2005 she interpreted as showing Hamilton had no loss of visual acuity, and September 28, 2006 LSUHSC notes she said revealed a normal optic nerve.  Additionally, Ms. Thomas stated that Hamilton's pain was noted to be out of proportion to his physical examination in an October 2, 2008 report from LSUHSC.

Our review of the medical records shows Hamilton was admitted to LSUHSC on July 21, 2005 with a diagnosis of having a foreign body in the orbit of

3

his right eye. Upon admission, Plaintiff complained of pain in his right eye, blurry vision, and scratching in the eye when he looked around.  Examination by an Ophthalmologist revealed that the globe itself was intact and in no immediate danger. The laceration above Hamilton's right eye at the junction of the brow and the eyelid, which cut had been closed by the time Plaintiff arrived at LSUHSC, was approximately two centimeters long.   Following a CT scan, it was determined a pencil that had broken off and was not protruding through the skin was present in the right orbital rim and was running into the nasal cavity. The pencil was surgically removed on July 22, 2005 with no particular complications, and the operative report noted no loss of visual acuity.  On the evening following the procedure, Hamilton experienced an episode of hypertension, which was controlled with medication.  When Plaintiff was discharged on July 23, 2005, physical examination showed full range of motion of the right eye and pupils that were equal and reactive to light.  Hamilton was returned to W.C.C. with instructions to take over-the-counter ibuprofen for pain and to engage in only light activity for two weeks.  [Exhibit D-14 (D).]

When Plaintiff returned to LSUHSC on July 29, 2005, as scheduled, he complained of a burning sensation in his eye, which condition had begun three days after the surgery.  Hamilton advised the pain improved when he placed a cold towel over his eye.  He also reported decreased vision in his right eye

secondary to his inability to open that eye. Physical examination found Plaintiff's vision was grossly intact. [Exhibit D-14 (D), pp. 215 - 218.]

During a follow-up examination at the LSUHSC Eye Clinic on August 15, 2005, Plaintiff continued to state he had pain in his right eye and could not open it. Hamilton also said he was unable to perceive light in the right eye. The physician noted this complaint was "unexplained," and that Plaintiff "withdrew from light shining in [right] eye." [Exhibit D-14 (D), pp. 213 - 214.] When Hamilton returned two days later, on August 17, 2005, he reported no improvement in the right eye. Physical examination identified no organic findings, so the physician recommended radiologic testing to rule out an orbital hematoma or some other type of damage. [Exhibit D-14 (D), pp. 210 - 211.]

A CT scan performed on October 17, 2005 revealed "[h]yperdense foreign objects in the roof of the right orbit involving soft tissues." [Exhibit D-14 (D), p. 234.] Surgery for removal of the foreign objects was scheduled for October 27, 2005 but was cancelled secondary to Plaintiff's uncontrolled high blood pressure, chest pain, and ischemic changes, which had abated by November 18, 2005. [Exhibit D-14 (A) and (D), p. 4.] Hamilton continued to complain of eye pain, vision loss, and photosensitivity. [Exhibit D-14 (A).] Physical examination at LSUHSC on November 18, 2005 identified foreign bodies in the right eyelid and no light or motion perception in the right eye. [Exhibit D-14 (D), p. 6.] Surgery to

5

remove the foreign bodies was rescheduled for November 21, 2005, but Plaintiff did not appear for the procedure. [Exhibit D-14 (D), pp. 1-14.]

MRI findings dated December 29, 2005 showed focal right optic nerve sleeve enhancement of an undetermined significance. [Exhibit D-14 (D), p. 233.] Visual Electrophysiology Testing performed January 13, 2006 revealed that Visual Evoked Potentials recorded from scalp electrodes over the occipital region were uninterpretable in the right eye, secondary to the non-use of a laser pointer. However, stimulation with diffuse bright white flashes of light yielded responses that were within normal limits for both eyes. [Exhibit D-14 (D), pp. 164-165.] Mirror testing also showed Plaintiff moved both eyes. Therefore, the examining physician suggested the visual loss could have "a functional component." (Exhibit D-14 (D), p. 173.]

On May 19, 2006, the prison physician returned Plaintiff to LSUHSC for further evaluation regarding removal of the foreign bodies from the eyelid. Hamilton reported, however, he had no changes in eye sensitivity, and he did not know why he had been sent to the hospital. On physical examination, Plaintiff was noted to be "blind" in the right eye, but the diagnosis stated only "right eye sensitivity." Follow-up evaluation in the Eye Clinic identified functional visual loss with a possible organic component. Therefore, another MRI was recommended. [Exhibit D-14 (D), pp. 143 - 147.] That test, which was performed on August 14, 2006 revealed both optic nerves were normal in appearance with no

6

enhancement.  [Exhibit D-14 (D), p. 232.] A psychiatric evaluation was then considered but found not to be needed at that time. [Exhibit D-14 (D), pp. 139-140.] When Hamilton was next seen at the LSUHSC Eye Clinic on March 26, 2007, he did not complain of pain or redness in his eye, but he did have occasional swelling of the eyelid and some dryness in the eye, for which artificial tears were recommended. Plaintiff continued to report no ability to perceive light in the right eye. [Exhibit D-14 (D), pp. 137 - 138.]

Plaintiff's prison medical records show he was wearing prescription sunglasses in August 2007, and that he got a headache when he removed his glasses outdoors. [Exhibit D-14 (A).]

Finally, Hamilton was seen at LSUHSC in Houma on October 2, 2008, at which time he complained of right eye pain and photophobia.  The attending physician noted Plaintiff's pain was out of proportion to the physical examination and that there was no optic nerve or retinal pathology. MRI performed on October 29, 2008 revealed no evidence of mass in either orbit, normal and symmetric bilateral extraocular muscles and optic nerves, and no abnormal enhancement of either optic nerve. [Exhibit D-14 (C).]

Quantum Evaluation

Given this thorough review of the record, the Court finds Plaintiff was extremely fortunate the injury to his eye was not more severe. Although Hamilton complains of a complete loss of vision in the right eye, the objective medical

findings do not support such a condition. Indeed, the Court itself observed that Plaintiff attempted to exhibit impaired vision at certain times, but when he was surprised by the presentation of documents or stimuli, he appeared to have no visual difficulties. This information, coupled with the lack of a medical explanation supporting a total loss of sight in Plaintiff's right eye, leads the Court to conclude Hamilton's complaints are embellished to some degree.

Accordingly, the Court finds a general damage award of $17,500.00 to be adequate. See Dixon v. Daniel Butane Gas, Inc., 858 So.2d 837 (La. App. 3d Cir. 2003) (awarding $15,000 in general damages to a man who underwent the removal of multiple foreign bodies embedded in the cornea and conjunctiva of both eyes after a pressure relief valve blew off a butane tank) and Darbonne v. Wal-Mart Stores, Inc., 774 So.2d 1022 (La. App. 3d Cir. 2000) (awarding $15,000 in general damages to a man who sustained temporary loss of vision in both eyes and residual light sensitivity for which he wore tinted glasses following the explosion of a car battery). Plaintiff has presented no evidence he has incurred any special damages, and no such proof would be expected, given Hamilton's incarceration.

Conclusion

For the reasons set forth herein, this Court will render judgment in favor of

Plaintiff, Michael Hamilton, and against Defendant, Robert Washington, in the

amount of $17,500.00 plus legal interest and costs, if any, as provided by law.

SIGNED on this _17_ day of March, 2010, at Alexandria, Louisiana.


                                        DEE D. DRELL
                              UNITED STATES DISTRICT JUDGE